IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UTZ QUALITY FOODS, LLC,<br>            Plaintiff,<br><br>       v.<br><br>DIRTY SOUTH BBQ CO., LLC AND<br>TIMOTHY TROY LONG,<br>            Defendants. | CIVIL ACTION<br><br><br><br>NO. 20-1146 |

# MEMORANDUM OPINION

Utz Quality Foods, LLC has sued Dirty South BBQ Co., LLC ("Dirty South") and Timothy Troy Long ("Long") for trademark infringement, unfair competition, and infringement of trade name in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, claiming that Defendants' "DIRTY Designations are confusingly similar to Utz's DIRTY Marks" and Defendants' use of them constitutes "willful and intentional infringement of Utz's federally registered DIRTY Marks." Defendants have moved to dismiss the Complaint on the basis that this Court lacks personal jurisdiction and that venue is improper in this district. Fed. R. Civ. P. 12(b)(2) & (3).

## I.     LEGAL STANDARD

In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving an exercise of jurisdiction would be proper. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). Where, as here, there has not been an evidentiary hearing, the plaintiff is required to establish a prima facie case of personal jurisdiction and is entitled to have its allegations taken as true and factual disputes resolved in its favor. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable

1

particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

## II.     DISCUSSION

### A. Waiver of Defenses

As a preliminary matter, Utz argues Defendants waived their lack of personal jurisdiction and improper venue arguments by failing to raise them at the appropriate time.  To address this argument a little procedural history of this case is required.  Defendants were served on March 11, 2020.  Long mailed a pro se answer postmarked March 24, 2020, purporting to answer for both himself in his individual capacity and for Dirty South.  However, default was entered against Defendants per Utz's request on April 7, 2020 because Long's pro se answer had not yet been docketed.  One week after it was docketed, Defendants—this time, through counsel—filed a motion to set aside the entry of default and to dismiss the case for lack of personal jurisdiction and improper venue.  Default was set aside on May 7, 2020.

Defenses of lack of personal jurisdiction and improper venue are waived if not "timely raised in the answer or a responsive pleading," *see Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (internal quotation marks omitted), and remain waived even if raised in a successive motion or pleading.  *See* Fed. R. Civ. P. 12(g)(2).  If a defendant waives the lack of personal jurisdiction and improper venue defenses, that defendant consents to personal jurisdiction, *Danziger*, 948 F.3d at 129 (explaining "[a] defendant may also consent to personal jurisdiction by waiving any objection to it"), and to venue,  *ACP GP, LLC v. United Home Care, Inc.*, 2018 WL 4693969, at *5 (D.N.J. Oct. 1, 2018) (finding the defendant "consented to venue . . . when he waived all objections to jurisdiction or *venue*. . . .") (emphasis in original) (internal quotation marks omitted).

Because Long failed to raise a lack of personal jurisdiction or an improper venue defense in that answer—which was filed *before* the defenses were raised in Defendants' initial motion to set aside default and dismiss—Long waived those defenses before joining that motion. *See Ins. Corp. of Ireland*, 456 U.S. at 704. As such, he may not assert them here. *See State Auto Ins. Co. v. Thomas Landscaping & Const., Inc.*, 494 F. App'x 550, 553 (6th Cir. 2012) (finding defendant waived objection in part by not raising it in initial, unsigned pro se answer). Accordingly, Long has consented to personal jurisdiction with this Court and to venue in this district.

The same is not necessarily true with respect to Dirty South, however. A corporation may appear in federal court "only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 195 (1993). Long is not an attorney. Therefore, despite Long's inclusion of Dirty South in his *pro se* answer, Dirty South first appearance was in Defendants' motion to set aside entry of default and dismiss. *See id.* Because Dirty South raised the defenses in that motion, it preserved the right to assert those defenses now.

**B. Jurisdiction**

Dirty South argues this Court lacks specific jurisdiction because it has never purposefully directed its activities at Pennsylvania.

A federal court determines whether the facts of a case establish personal jurisdiction over a defendant "according to the law of the state where it sits." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's jurisdictional statute, 42 Pa. Cons. Stat. Ann. § 5322, permits the "exercise [of] personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment." *Mellon Bank*, 960 F.2d at 1221. Only if the following three elements are established is that standard met: "[f]irst, the defendant must have purposefully directed its activities at the forum. Second, the plaintiff's

claims must arise out of or relate to the defendant's activities.  And third, exercising personal jurisdiction must not offend traditional notions of fair play and substantial justice." *Danziger*, 948 F.3d at 129-30 (internal quotations, citations and alterations omitted).

Here, Utz argues that four facts support finding specific jurisdiction: (1) Dirty South sold one product to Utz's counsel; (2) Dirty South operates a website accessible in Pennsylvania that allows product sales into Pennsylvania; (3) Dirty South's products may be sold into Pennsylvania via third-party websites; and, (4) there exists a likely possibility products have been sold into Pennsylvania by Dirty South and third-party websites.

Utz's counsel's purchase of Dirty South's seasoning was "orchestrated" by the Plaintiff for the purposes of this litigation in that it is a "'fortuitous,' 'random,' and 'attenuated' contact[] that the Supreme Court has held insufficient to warrant the exercise of jurisdiction." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 (3d Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (explaining that plaintiff "orchestrated" sales of the defendant's product when an assistant in plaintiff's legal department and an employee of plaintiff's attorneys purchased defendant's product via defendant's website about eight months prior to plaintiff filing the suit).  Here, the sale to Utz's counsel is more blatantly "orchestrated" than the sales in *Toys "R" Us* in that Utz's attorney purchased Defendant's product just three days before this suit was filed.  Therefore, the sale does not show purposeful direction by Dirty South and is insufficient to establish specific jurisdiction over Dirty South.  *Id.* (holding that as the only two documented sales from defendant to the United States were "orchestrated" by counsel for the plaintiff, they were insufficient to establish specific jurisdiction).

Further, the mere existence of Dirty South's website also fails to support the exercise of specific jurisdiction as its existence alone does not satisfy the purposeful direction prong of this

4

Circuit's specific jurisdiction test.  According to the Third Circuit:

> the mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world.  Rather, there must be evidence the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

*Toys "R" Us*, 318 F.3d at 454.  Therefore, there must be "something more" beyond Dirty South's website simply allowing product sales into Pennsylvania to show that Dirty South purposefully directed its activities at Pennsylvania.  *Id.* at 452 (acknowledging that "courts have repeatedly recognized that there must be 'something more' to demonstrate that the defendant *directed its activity towards the forum state*") (emphasis in original).

Here, Utz argues the "something more" comes from Dirty South (1) knowingly selling one product to Utz's counsel and (2) allowing its products to be shipped into Pennsylvania and this district via its website and third-party websites.  However, the sale to Utz's counsel along with the "mere operation of a commercially interactive website" does not constitute purposeful availment.  *Id.* at 454 (explaining that "based on the facts established in this case thus far [*i.e.*, the two sales orchestrated by the plaintiff's affiliates and the operation of a commercial website], [plaintiff] has failed to satisfy the purposeful availment requirement.").  Neither does Dirty South's "use of a third-party website to facilitate sales satisfy the *Toys "R" Us*" purposeful availment standard,  *See e.g., Flipside Wallets, LLC v. Brafman Grp. Inc.*, 2020 WL 1330742, at *3 (E.D. Pa. Mar. 19, 2020) (holding that the defendant using Amazon to sell its allegedly trademark-infringing wallets did not constitute purposeful availment); *see also Shuker*, 885 F.3d at 780 (explaining that "efforts to exploit a national market that necessarily include[s] Pennsylvania are insufficient" to show the "deliberate targeting of the forum" required to "meet our Circuit's requirement of purposeful availment. . . .") (internal quotation marks and citations

omitted).

Similarly, a likely possibility of sales via Dirty South's and third-party websites does not alone establish specific jurisdiction. *Heartrepreneur, LLC v. Jones*, 2020 WL 2839102, at *4 (E.D. Pa. June 1, 2020) (holding plaintiffs "failed to make even a threshold showing" of specific jurisdiction based only on an alleged possibility the defendants transacted business in the judicial district).

As the sale to Utz's counsel and the fact that Dirty South's website and third-party websites allow sales into Pennsylvania fail to demonstrate purposeful direction, and the likely possibility sales have occurred via those websites into Pennsylvania fails to "make even a threshold showing" of specific jurisdiction,[1] there is no need to analyze the other two prongs of this Circuit's specific jurisdiction test, or to reach the issue of venue. Utz has failed to meet its burden to establish a prima facie case of personal jurisdiction. As such, this Court lacks personal jurisdiction over Dirty South.

**C. Transfer**

Given that this Court does not have personal jurisdiction over Dirty South the question becomes whether the matter should be transferred to the Eastern District of Texas as Utz suggests it should.

Transfer of venue for "want of jurisdiction" is governed by 28 U.S.C. § 1631. *See also Chavez*, 836 F.3d at 224. Section 1631 provides that "a district court 'shall' transfer the case

---

[1] Utz also argues that this Court has jurisdiction over Dirty South through Pennsylvania's "tort out / harm in" provision, which "extends jurisdiction to any person who 'causes harm or tortious injury in the Commonwealth by an act or omission outside the Commonwealth." *Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp.2d 578, 582 (E.D. Pa. 2005) (quoting 42 PA. CONS. STAT. ANN. § 5322(a)(4)). However, the constitutional requirements for establishing specific jurisdiction apply notwithstanding Pennsylvania's "tort out / harm in" provision. *See Endless Pools*, 362 F. Supp.2d at 582. Because these requirements have not been satisfied, the Court does not reach the "tort out / harm in" issue.

rather than dismiss it 'if [doing so] is in the interest of justice.'" *Danziger*, 948 F.3d at 132.  In determining whether a transfer would be "in the interest of justice," factors to consider are whether the court to which the case would be transferred could exercise personal jurisdiction over the parties and would serve as a proper venue and whether "dismissal would be 'time-consuming and justice-defeating,' in [the present] manner." *TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp.3d 520, 529 (E.D. Pa. 2019) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).  Personal jurisdiction can be exercised by a federal court in a certain state over a defendant company if that company is situated within that state. *TorcUP*, 386 F. Supp.3d at 529.  And, venue in a district within a state is proper if all defendants are residents of that state.  *See id.*; 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").

A district court in the Eastern District of Tennessee could exercise personal jurisdiction over Dirty South because Dirty South is situated in Franklin County, Tennessee.  *Id.*  Further, venue would be proper in that district as Dirty South is a resident of Tennessee.  *See id.*  Finally, as Utz could refile its complaint in that district if this case were dismissed, transferring this case skips the middle steps of dismissal and refiling, which therefore makes transfer in the interest of justice in this case "because dismissal would be 'time-consuming and justice-defeating[.]'" *Id.* (quoting *Goldlawr*, 369 U.S. at 467).  And, as explained in the following section, personal jurisdiction and venue for Long also lie in the Eastern District of Tennessee; this too supports Dirty South's transfer, as having parallel proceedings in two different districts would likewise be "time-consuming and justice defeating." *Id.*; *see also Zieper v. Reno*, 111 F. Supp.2d 484, 492 (D.N.J. 2000) (concluding transfer to a proper district under section 1631 was "appropriate and

7

in the interest of justice" for a case against two defendants where one had waived a lack of personal jurisdiction defense). Because the interest of justice in this case counsels in favor of transfer, Utz's request to transfer will be granted under Section 1631 as to Dirty South.

Turning to Long, though Long has waived any objection to improper venue, this Court may transfer him *sua sponte* to any other district where this action might have been brought. *See* 28 U.S.C. § 1404(a) (stating that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ."); *see also Danziger*, 948 F.3d at 132 (noting that a court has the authority to order *sua sponte* transfer under Section 1404(a)). In deciding whether to transfer under section 1404(a), courts consider the factors identified in the statute—the convenience of parties and witnesses and the interest of justice—along with "relevant" private and public factors. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Potentially relevant private factors include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] whether the claim arose elsewhere; [3] the convenience of the parties as indicated by their relative physical and financial condition; [4] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; [5] and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (internal citations omitted). And, public factors include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; [6] and the familiarity of the trial judge with the applicable state law in diversity cases

*Id.* at 879-80 (internal citations omitted).

Here, transferring this case to the Eastern District of Tennessee would be convenient for both parties because Long will not be forced to litigate by himself in this district and Utz will not

8

have to litigate the same case in two different fora.  *See Phoenix Ins. Co. v. Teva Pharm. Indus.*, 381 F. Supp.3d 416, 423-24 (E.D. Pa. 2019) (finding convenience was served by consolidating lawsuits involving nearly identical claims to the same district).  Further, judicial efficiency is served in that the same case would not have to be litigated in two different federal district courts.  *Phoenix Ins. Co.*, 381 F. Supp.3d at 424 ("[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent.").

The Eastern District of Texas is also likely more convenient for relevant witnesses, as Defendants have alleged all relevant witnesses can be found in Franklin County, Tennessee, whereas Utz has provided no information about potential witnesses.  *See id.* at 424 (noting the court was unable to determine whether the current district was the most convenient for witnesses given that the plaintiff provided no information on that matter, but then referenced a case where transfer was appropriate to a forum where non-party witnesses could be found).

Turning to the private factors, the first factor is essentially neutral, as Utz's "forum preference as manifested in [its] original choice" for this case is mitigated by its requested transfer of Dirty South.  *See Berndt v. Deloitte & Touche LLP*, 2012 WL 3029767, at *4 (E.D. Pa. July 25, 2012) (no deference due where plaintiff was moving party for transfer).  Whether the claim arose elsewhere favors transfer because Long is the president and CEO of Dirty South, Dirty South's headquarters are in the Eastern District of Tennessee, and "[w]hen a plaintiff's cause of action arises from strategic policy decisions of a defendant corporation, the defendant's headquarters can be considered the place where the claims arose."  *Phoenix Ins. Co.*, 381 F. Supp.3d at 423 (identifying that in a suit against a defendant corporation and its directors and officers, the plaintiff's claim arose in the district where the defendants' headquarters were

located) (internal quotations omitted).  The convenience of the parties as indicated by their relative physical and financial condition favors transfer as Utz admits its "DIRTY" potato chips are a multi-million-dollar brand, will already be proceeding against Dirty South in the Eastern District of Tennessee, and have not claimed it is unable to litigate in that forum.  *See Synthes, Inc. v. Knapp*, 978 F. Supp.2d 450, 461-62 (E.D. Pa. 2013) (holding this factor weighed against a corporate plaintiff suing an individual defendant given the corporation was already litigating in the proposed forum for transfer and the corporation had not claimed they were unable to litigate there).  The fourth factor is neutral as Utz has provided no information about potential witnesses and neither party has argued whether any witnesses would be unavailable for trial in this district or the Eastern District of Tennessee.  The fifth factor has had its balancing weight "significantly reduced" by the "technological advances of recent years" and the "ubiquity of electronically stored documents," *Panitch v. Quaker Oats Co.*, 2017 WL 1333285, at *7 (E.D. Pa. Apr. 5, 2017), and is neutral here because neither party has argued any books or records "would be less available if the matter were transferred," *Phoenix Ins. Co.*, 381 F. Supp.3d at 424.  On the whole, the private factors counsel in favor of transfer.

As for the public factors, the enforceability of the judgment is neutral as the parties do not address this issue and judgments in this district and the Eastern District of Tennessee are equally enforceable.  *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp.3d 218, 227 (D. Del. 2017) (holding this factor is neutral when judgments from the districts being considered are equally enforceable).  The second factor favors transfer as practical considerations counsel against "two cases involving precisely the same issues . . . pending in different District Courts. . . ." *Phoenix Ins. Co.*, 381 F. Supp.3d at 424.  The third factor favors transfer as the Eastern District of Tennessee's docket is less congested than in the Eastern District of Pennsylvania.  *Synthes*, 978

F. Supp.2d at 462 (citing the federal government's table for pending civil cases to compare the dockets in the two districts in that case); *see also* Table C, Civil Cases Filed, Terminated, and Pending (noting that as of Mar. 31, 2019, over 6,000 civil cases were pending in this district compared to about 1,400 in the Eastern District of Tennessee).[2] The local interest in deciding local controversies at home and the public policies of the fora are neutral factors here as Utz is a Delaware corporation with its place of business in the Middle District of Pennsylvania and Utz has identified all but one product sale as having occurred outside this district. *McKinney v. Pinter*, 2019 WL 952247, at *7 (E.D. Pa. Feb. 26, 2019) (holding those factors as neutral because "nearly all the alleged culpable conduct occurred" outside the judicial district and only one of the parties was a Pennsylvania resident). The familiarity of the trial judge with the applicable state law in diversity cases is a neutral factor because there are no state law claims at issue here. On the whole, the public factors also counsel for transfer.

As the factors considered under section 1404(a) counsel for transferring this case to the Eastern District of Tennessee, a *sua sponte* transfer under section 1404(a) shall be ordered.

**IV. CONCLUSION**

For the reasons stated above, Defendants' motion will be denied, and this case will be transferred to the Eastern District of Tennessee.

An appropriate order follows.

**July 28, 2020**                                        **BY THE COURT:**

                                                         **/s/WENDY BEETLESTONE, J.**

                                                         _____
                                                         **WENDY BEETLESTONE, J.**

---

[2] *Available at* https://www.uscourts.gov/federal-judicial-caseload-statistics-2019-tables.

12